## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| DRB #24, LLC, *a Minnesota Limited Liability Company on behalf of itself, and all those real property owners similarly situated in the City of Minneapolis* and 701 NEWTON AVENUE NORTH, MINNEAPOLIS, MINNESOTA, *on behalf of itself, and all those similarly situated real properties located in the City of Minneapolis, Minnesota*, | Civil No. 12-1503 (JRT/JSM) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| v. | |
| CITY OF MINNEAPOLIS, *a Municipal Corporation*, JOHN DOE, and MARY ROE, | |
| Defendants. | |

Mark J. Kallenbach, **KALLENBACH LAW OFFICE**, 2260 Ridge Drive Suite 13, Minneapolis, MN 55416, and Michael Kemp, **MET LAW GROUP**, 500 Laurel Avenue, St. Paul, MN 55102, for plaintiffs.

Gregory P. Sautter and Kristin R. Sarff, Assistant City Attorneys, **OFFICE OF THE CITY ATTORNEY**, 350 South Fifth Street, City Hall, Room 210, Minneapolis, MN 55415, for defendant City of Minneapolis.

This case arises out of the City of Minneapolis' assessment of fees for vacant buildings. Plaintiff DRB #24 ("DRB"), the owner of a vacant building, brought suit on behalf of himself and others similarly situated challenging the validity of the fees and the City's authority to assess such fees. The matter came before United States Magistrate Judge Janie S. Mayeron on the parties' cross-motions for summary judgment. In an

August 2, 2013 Report and Recommendation ("R&R"), the Magistrate Judge recommended that the Court grant Defendants' motion to dismiss because DRB failed to file an appeal of the City's assessments within the time limit provided for such an appeal by Minnesota law.  Before the Court are DRB's objections to the R&R.  After *de novo* review of the Magistrate Judge's Report and Recommendation, with particular emphasis on consideration of the issues raised in DRB's objections, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b), the Court will conclude that the R&R is well-supported and reaches the appropriate legal conclusions in these circumstances.  Accordingly, the Court will overrule DRB's objections and adopt the R&R.

## BACKGROUND

### I.    THE VACANT BUILDING REGISTRATION PROGRAM

In 2001 Minneapolis established a Vacant Building Registration ("VBR") program.  Minneapolis, Minn., Code of Ordinances [hereinafter M.C.O.] § 249.80. Through the program, owners of vacant properties are required to register the vacant property with the City and pay an annual fee.  The fee permits the City to "recover all costs incurred by the city for monitoring and regulating vacant buildings, including nuisance abatement, enforcement and administrative costs." M.C.O. § 249.80(j)(1).  The amount of the fee is set by the Director's Fee Schedule.  *See* M.C.O. § 249.80(j)(i); (*see also* Second Decl. of David Busch, Ex. A, Nov. 7, 2012, Docket No. 18.)  If a property owner fails to pay the fee, the City may levy and collect the fee as a special assessment against the property under the City's provision for special assessments for nuisance

conditions.  M.C.O. § 249.80(j)(3) (referencing M.C.O. § 227.100 (provision for special assessments)).  This arrangement is authorized by a Minnesota statute, which permits cities to collect vacant building registration fees as a special assessment against the property.  Minn. Stat. § 429.101, subd. 1(a)(12).

When the City intends to assess a VBR fee it must serve a written Notice of Intent to Assess ("Notice") to the property owner.  See M.C.O. § 249.80(j)(3); M.C.O. § 227.100.  The Notice must comply with certain requirements under the Minneapolis Code of Ordinances and the property owner may challenge the assessment at a hearing.  *See* M.C.O. § 227.100(d).  Under Minnesota law, if the owner does not prevail with his or her objections to the assessment, the owner may appeal the assessment to the district court by serving notice to the mayor or city clerk within thirty days after the adoption of the assessment and filing the notice with the district court within ten days after serving notice to the city.  Minn. Stat. § 429.081; *see also* M.C.O. § 227.100(d).[1]  Such appeal is the "exclusive method of appeal from a special assessment levied pursuant to this

---

[1] It is not clear whether § 429.081 permits a total of forty days for appeal to the district court or thirty days.  *See* Minn. Stat. § 429.081 ("Within 30 days after the adoption of the assessment, any person aggrieved . . . may appeal to the district court by serving a notice upon [the city]. The notice shall be filed with the [district court] within ten days after its service."). One Minnesota Court of Appeals' opinion interpreted this to mean that § 429.081 permits a total of forty days from the date of adoption for appeal to the district court, *Curiskis v. City of Minneapolis*, 729 N.W.2d 655, 660 (Minn. Ct. App. 2007), but the plain language of § 429.081 also could be interpreted to require appeal to the district court within thirty days.  Minneapolis Code of Ordinances § 227.100(d) appears to permit only thirty days, see M.C.O. § 227.100(d) ("the owner may appeal the assessment to the district court within thirty (30) days after the adoption of the assessment by the council at an annual meeting"). Because, as the Court will explain below, DRB does not dispute that it never filed notice of appeal of the special assessment in accordance with these procedures, the difference between a thirty and forty day deadline is immaterial.  The Court need not determine whether the ten days to file with the district court under § 429.081 are in addition to the thirty days to serve notice upon the city.

chapter," and "[a]ll objections to the assessment shall be deemed waived unless presented on such appeal." *Id.*

## II.     DRB'S SPECIAL ASSESSMENTS

DRB owns the property at 701 Newton Avenue North, Minneapolis.  701 Newton is vacant.  (Second Busch Decl. ¶ 2.)  In June 2011, DRB received a Notice of Intent to Assess for an unpaid 2010 VBR fee of $6,550.  (Second Busch Decl., Ex. B.)  The 2010 Notice stated in relevant part:

> On January 19, 2011 after proper orders were issued by the City of Minneapolis or under emergency authority of the Minneapolis Police or Fire Department, the following action was taken at the address noted above:
>
> **VACANT BUILDING REGISTRATION FEE**
>
> **Total cost is: $6,550.00**
>
> The cost of the correction, fine or fee is proposed to be levied as a special assessment against the property, according to the procedures set out at Minneapolis Code of Ordinances § 227.100.

(*Id.*)  DRB appealed the assessment and after an administrative hearing on July 21, 2011, the hearing officer determined that the assessment should be levied in full.  (*Id.*, Exs. D, E.)

Again in April 2012, DRB received a Notice of Intent to Assess for an unpaid 2011 VBR fee of $6,746.  (*Id.*, Ex. C.)  The relevant part of the 2011 Notice is nearly identical to the 2010 Notice:

> On February 3, 2012 after proper orders were issued by the City of Minneapolis or under emergency authority of the Minneapolis Police or Fire Department, the following action was taken at the address noted above:
>
> **VACANT BUILDING REGISTRATION—CONB POSTED ON 12/19/2010**

**Total cost is: $6,746.00**

The Cost of the correction, fine or fee is proposed to be levied as a special assessment against the property according to the procedures set out at Minneapolis Code of Ordinances § 227.100[.]

(*Id.*)  DRB objected and the hearing officer adopted the assessment on May 31, 2012. (*Id.*, Exs. F, G.)

## III.   PROCEDURAL HISTORY

DRB does not dispute that it did not appeal the assessments to the district court within the deadline in accordance with Minn. Stat. § 429.081.  (*See* Letter to Magistrate Judge, March 14, 2013, Docket No. 40 (in response to Letter to Magistrate Judge, March 14, 2013, Docket No. 40).)  Instead DRB filed this action in state court on behalf of itself, its vacant property at 701 Newton Avenue in Minneapolis, and other owners and properties similarly situated against the City and unknown individual defendants.[2] (Notice of Removal, Ex. A ("Compl."), June 22, 2012, Docket No. 1.)  The Complaint alleges over thirty claims against the City related to the assessments: that the VBR fee is higher than actually required to monitor vacant buildings, (Compl. ¶¶ 41-50), that the interest rate exceeds the interest rate permitted by Minnesota law and violates Minnesota usury law, (*Id.* ¶¶ 85-91, 122-28), that the VBR fee violates the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and sections Eight, Ten, and Thirteen of the Minnesota State Constitution, (*Id.* ¶¶ 51-84, 92-121, 144-50), and that the City does

---

[2] The Court will refer collectively to defendants as the "City," and will refer collectively to plaintiffs as "DRB."

not have the legal authority to specially assess VBR fees, (*Id.* ¶¶ 122-36). Most relevant to DRB's objections to the R&R, the Complaint alleges that the City failed to provide DRB with proper notice of the basis of the fee. (*Id.* ¶¶ 137-43.) Additionally, the Complaint brings causes of action for intentional and negligent misrepresentation, unjust enrichment, and slander of title. (*Id.* ¶¶ 151-84.)

The City removed to federal court, denied the allegations in the Complaint and asserted various defenses, including a defense that some claims were barred by the Tax Injunction Act, 28 U.S.C. § 1341. (Notice of Removal, June 22, 2012, Docket No. 1; Answer, June 22, 2013, Docket No. 2.) DRB moves for partial summary judgment on the Tax Injunction Act defense and the Magistrate Judge recommended that the Court grant DRB's motion. The City does not object to that recommendation, so the Court need not consider that issue further and will adopt the recommendation of the Magistrate Judge to dismiss the motion. DRB also moves for partial summary judgment on counts IX through XIX of the Complaint (counts related to the interest rate, the City's authority to assess the fees, and the adequacy of the City's notice of the fees).[3] The City moves for summary judgment on all issues except for the reasonableness of the fees.

The Magistrate Judge issued an R&R, recommending that the Court grant summary judgment for the City on all counts. (R&R, Aug. 2, 2013, Docket No. 62.) The Magistrate Judge reasoned that, because DRB failed to appeal the assessments within

_____

[3] DRB also initially sought summary judgment on the issue of whether the fees are reasonable, but later withdrew that request without prejudice. (*See* Letter to Magistrate Judge, Mar. 8, 2013, Docket No. 36.).

thirty days of their adoption, all of DRB's claims are barred by Minn. Stat. § 429.081 and

M.C.O. § 227.100.  (R&R at 16-18.)  To the extent that DRB argued that those appeal

procedures and the time limit for appeal did not apply because the assessments were void

for improper notice, the Magistrate Judge found that the Notices met the requirements of

M.C.O. § 227.100.  (R&R at 20-21.)

DRB objects to the R&R, raising three issues for the Court: (1) whether the City's

Notices of its intent to assess the fees were deficient, (2) if the Notices were deficient,

whether the appeal deadline properly applies, and (3) whether the appeal deadline applies

to claims DRB characterizes as "non-special assessment causes of action," such as fraud,

unjust enrichment, and negligent misrepresentation.[4]  Because parties are required to state

objections to a Report and Recommendation with particularity, see Fed. R. Civ. P.

72(b)(2), the Court will consider only DRB's three, specific objections to the R&R and

will not reach or comment on any other issue in the case.

---

[4] The City argues that DRB's objections are not properly before the Court because DRB failed to request transcripts of the proceedings before the Magistrate Judge in accordance with Local Rule 72.2(b)(1). *See* D. Minn. LR 72.2(b)(1) ("Unless the district judge orders otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge deems sufficient.").  DRB did not request the transcripts, so the Court has not had the benefit of reviewing the transcripts of proceedings before the Magistrate Judge.  But DRB's objections to the R&R are not based on what occurred during those proceedings, so the Court concludes that it may address DRB's objections without the benefit of the transcripts. *See United States v. Agboola*, Civ. No. 01-162, 2003 WL 292081, at *1 n.2 (D. Minn. Jan. 21, 2003).

**DISCUSSION**

## I.     STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

Here, the Magistrate Judge issued a recommendation applying the standard for summary judgment. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.      NOTICE

DRB argues that the City's Notices of the special assessments were deficient under M.C.O. § 227.100.  That section states the notice requirements applicable to the Notices DRB received:[5]

> Such notice shall state the amount and basis for the costs and the time, date and place of a hearing before a hearing officer appointed by the council to determine the validity and amount of the proposed assessment.  The notice may require, as a prerequisite to an owner's challenge of an assessment, that the owner file written objections to the assessment no later than fifteen (15) days before the hearing.  The notice shall state that the owner may appeal the assessment to the district court within thirty (30) days after the adoption of the assessment by the council at an annual meeting.  The notice shall also inform the owner of the provisions of Minnesota Statutes Sections 435.193 to 435.195 and of the existence of any deferment procedure.

M.C.O. § 227.100.  DRB argues that the Notices it received were deficient in two ways: they failed to state the "basis for the costs" and they failed to inform the owner of "the existence of any deferment procedure."

The City argues that the issue of the Notices' deficiency is not properly before the Court because DRB did not allege in its Complaint that the Notices were defective.

---

[5] Before the Magistrate Judge, the parties disputed which notice requirements applied to the City's notice:  M.C.O. § 227.100 or Minn. Stat. § 429.061.  The Magistrate Judge found that the City's Notices need meet only the requirements of M.C.O. § 227.100, (R&R at 19-20), and DRB does not object to that finding.  Even if it had, the Court would likely find that the City may elect to issue notices in accordance with its own ordinance, rather than Minn. Stat. § 429.061, as Minnesota courts have found that municipalities may enact and apply specific notice provisions as alternatives to § 429.061.  *See Curiskis*, 729 N.W.2d at 658 ("Minnesota Statutes chapter 429 governs local improvements and special assessments, and allows a city to use either chapter 429 or its home rule charter in making improvements and imposing special assessments."); *cf. Singer v. City of Minneapolis*, 586 N.W.2d 804, 805 (Minn. Ct. App. 1998) ("Absent a specific charter or ordinance provision governing the assessment procedure, Minn. Stat. ch. 429 applies to special assessments made under the city's home rule charter.").

Count XIX of DRB's Complaint is entitled "City's Special Assessments for Unpaid Vacant Building Registration Fees Are Void for City's Failure to Comply with MCO § 227.100(d)."  (Compl. at 39.)  In the Complaint, DRB also alleges that the 2010 and 2011 Notices "d[id] not disclose the 'basis for the costs' of the annual Vacant Building Registration Fees."  (*See id.* ¶ 139; *see also id.* ¶¶ 137-43.)  Based on these allegations, the Court finds that DRB adequately raised the issue of deficient notice in its Complaint. Although those paragraphs substantively challenge only the Notices' adequacy with regard to the "basis of the costs," the Court broadly construes Count XIX's challenges to the adequacy of notice in general and will consider both of DRB's arguments against the adequacy of the Notices.

### A.    Basis for the Costs

DRB argues that the Notices failed to state the basis for the costs, and instead "[m]erely characterize[ed] or describe[ed] in a narrative form" what the proposed assessments were for.   (Pl.'s Objections at 7, Aug. 16, 2013, Docket No. 63.) Specifically, DRB argues that the Notices should have provided a "foundation, development, calculation or explanation" that would justify the amount of the fee.  (*Id.* at 6.)  The Court must therefore determine whether the language from the Notices stating: "VACANT BUILDING REGISTRATION FEE" and "Total cost is: $6,550.00" sufficiently provides notice of the basis for the costs as required by the Ordinance.

The ordinance states that the Notice need include only the "basis" for the cost, not the calculation or a justification for it.  M.C.O. § 227.100.  Words and phrases used in the

Minneapolis Code of Ordinances "shall be construed in their plain, ordinary and usual sense." M.C.O. § 3.10. The term "basis for the costs" is most reasonably interpreted in this situation to mean a description of what the costs are for, not a thorough calculation of or justification for the VBR. Generally, the purpose of notice is to enable the owner to challenge the assessment. *See Meadowbrook Manor, Inc. v. City of St. Louis Park*, 104 N.W.2d 540, 543 (Minn. 1960) ("property owner is entitled to a reasonable notice" of special assessment and was entitled to notice that would give taxpayer "opportunity to question the validity of the amount of the assessment"). The information in these Notices provided sufficient information for DRB to challenge the assessments: the Notices made clear that the fees were for the Vacant Building Registration program. DRB would not have needed more specific information about how the City calculated the amount of the fees assessed to its property because the amount of the fees were standardized, not unique to DRB's property. To the extent DRB wished to challenge the amount and justification of the standard fee, it could do that through the objection and appeal procedures, but would not need more information in the Notices about how the City calculated the amounts in order to do so.[6]

---

[6] Under other circumstances for which M.C.O. § 227.100 prescribes the notice requirements, more explanation might be necessary, as M.C.O. § 227.100 also applies to situations in which the City has completed work to abate a specific nuisance on a property, such as mowed the lawn or trimmed the hedges after the owner failed to do so. In such a situation, "basis for the costs" might include the cost for each type of work completed, the total of which amounts to the total special assessment for that property. Here, however, the costs were assessed not for work done that would be unique to 701 Newton, but as the City's required fee for a vacant building set according to the Director's Fee Schedule. The Notices clearly stated that

(Footnote continued on next page.)

To the extent DRB argues that the requirements of Minnesota Statutes § 429.061 should inform the interpretation of the term "basis" in MCO § 227.100, Minn. Stat. § 429.061 does not support DRB's interpretation.[7]  It requires that:

> Such notice shall state the date, time, and place of such meeting, the general nature of the improvement, the area proposed to be assessed, the total amount of the proposed assessment, that the proposed assessment roll is on the file with the clerk, and that written or oral objections thereto by any property owner will be considered.

Minn. Stat. § 429.061.   With regard to the amount of the assessment, Minn. Stat. § 429.061 requires that the notice include only the "total amount of the proposed assessment."   None of its other requirements – the "general nature of the improvement" or the "area proposed to be assessed" would require the kind of calculation and justification for the total amount that DRB proposes is required.[8]

_____

(Footnote continued.)

basis of the fee, which was sufficient information for DRB to challenge the fee in the administrative hearing (and in the instant action).

[7] The Court questions the extent to which a distinct Minnesota Notice statute bears on the interpretation of a Minneapolis ordinance.  Nothing in Minnesota law requires the Court to construe M.C.O. § 227.100 in light of Minn. Stat. § 429.061.  Rather, based on the relevant case law, it seems that municipalities are permitted to pass ordinances enumerating notice requirements that replace Minn. Stat. § 429.061.  *See, e.g.*, *Curiskis*, 729 N.W.2d at 657-58 ("Minnesota Statutes chapter 429 governs local improvements and special assessments, and allows a city to use either chapter 429 or its home rule charter in making improvements and imposing special assessments.").   To the extent that DRB argues that § 429.061 must serve as the minimum, floor, requirements and municipalities can replace it only with ordinances with more stringent notice requirements, the Court finds no basis for that in Minnesota law.

[8] DRB cites two cases in support of its contention that "basis for the costs," includes the underlying justification for the fee, but neither applies to the circumstances here.  In the first, the Eighth Circuit found that the district court abused its discretion in ordering $50,000 in attorney sanctions, apparently for attorney misconduct, but with no explanation of how the court reached that amount.  *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 809 (8th Cir.

(Footnote continued on next page.)

Because the Notices identified the amount and type of fee being assessed, the Court finds that the Notices the City sent to DRB adequately stated the "basis for the costs" under M.C.O. § 227.100.

## B.  Deferment Procedures

DRB also argues that the Notices were deficient because they failed to include information about the "existence of any deferment procedure." The ordinance requires that the notice "inform the owner of the provisions of Minnesota Statutes Sections 435.193 to 435.195 and of the existence of any deferment procedure." M.C.O. § 227.100. DRB argues that the term "any deferment procedure" required the City to inform him that the fee may be waived or suspended, which the City permits as a term of

_____

(Footnote continued.)

2005). The Eighth Circuit noted that it was "difficult for our court to evaluate whether the sanction is appropriate" because of the "district court's failure to explain the basis for the amount of the sanction" and found that a more detailed explanation was necessary for such a large sanction amount. *Id.* at 808-09. Although the Eighth Circuit's use of the term "basis" in this case supports DRB's argument that "basis" means a foundation or explanation for how an amount was calculated, the circumstances of the case differ significantly from the context of the term "basis" here. A district court's award of attorney sanctions is a highly discretionary matter, which, as in *Bayer*, can require detailed explanations to support the use of that discretion. That differs substantially from a city's standard fee for vacant buildings, set annually for all such buildings in the city.

The other case involved another very different context – the notice required to be provided to union members in order for them to object to "fair share" fees. There, the information required to be included in the notice was set out by state regulation, which required that the notice contain "sufficient information to identify expenditures for collective bargaining and contract administration services." *Kuehn v. Am. Fed'n of State, Cnty. & Mun. Emps., Council No. 65, Hibbing, Minn.*, 435 N.W.2d 130, 133 (Minn. Ct. App. 1989) (quoting Minn. R. 5510.140, subpt. 1 (D) (1987)). The notice required by a separate statutory scheme and accompanying regulations does not bear on the notice required under Minneapolis ordinance.

a written restoration agreement or order of demolition, or if the property is acquired by the Community Planning and Economic Development Department.   *See* M.C.O. § 249.80(j)(1) (citing § 249.50) (the VBR fee may be "waived or suspended for the current year as a term or condition of a written restoration agreement or order issued pursuant to § 249.50.  This fee may be waived for the current year and previous years if the property is acquired by the Community Planning and Economic Development (CPED) Department.").

The Court concludes that the phrase "or the existence of any deferment procedure" does not require the City to include information in the Notices about possible waivers and suspensions because waiver and suspension are distinct from deferment in the Minneapolis Code of Ordinances.  The Minneapolis Code of Ordinances does not define "deferment procedure," waiver, or suspension.  But it refers to waiver and suspension as such, not as deferments, even though it elsewhere refers explicitly to deferral.  For example, the Code explicitly delineates deferral procedures for sewer and water service-related payments.  *See* M.C.O. §§ 509.910, 509.970, 505.90.[9]  "It is a well-established canon of statutory interpretation that the use of different words or terms within a statute

---

[9] The Code also once references deferral in the context of housing assessments, noting that the housing appeals board does not have authority to take any action with respect to vacant building fees except to recommend that collection be deferred for up to a year.  M.C.O. § 242.80 (citing M.C.O. § 87.150).  This might constitute a deferment procedure that the City failed to include in the Notices, but DRB does not argue that the Notices were deficient for failing to reference this section.  The existence of this deferral does not further DRB's argument that waiver and suspension constitute "deferment procedures" that should have been included in the Notices.  Rather, the Court takes this reference to deferred vacant building payments as evidence that the Minneapolis Code of Ordinances distinguishes between "waivers" or "suspensions" and "deferrals."

demonstrates that Congress intended to convey a different meaning for those words." *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)). The Code could have labeled the waiver and suspension procedures in M.C.O. § 249.80(j)(1) as deferrals, as it did in the sewer and water service sections, but it did not. Moreover, the waiver and suspension DRB points to contemplate that the fee in question may never be paid (e.g., if appropriate restorations are made), whereas a deferment contemplates merely a prolonged schedule for payment.

In light of the references in the same sentence to specific deferment procedures, and the contemplation of other deferrals in the Minneapolis Code of Ordinances, DRB's interpretation that "any deferment procedure" includes the suspension or waiver available when a vacant building owner enters into a restoration agreement is not plausible.  The Court therefore finds that the Notices sent to DRB comply with M.C.O. § 227.100 with regard to informing the owner of the "existence of any deferment procedure."

## III.    DEADLINE FOR APPEAL

DRB's next objection to the R&R is that, because notice was deficient, the City lacked jurisdiction to adopt the assessments so the time frame for appealing the assessments never began to run and the appeal procedures in Minn. Stat. § 429.081 did not apply.

The Magistrate Judge recommended that the Court find that DRB waived its claims by failing to properly file an appeal with the district court within 30 days of the adoption of the assessments.  If a property owner fails to do so, all objections to the

- 15 -

special assessment are waived. Minn. Stat. § 429.081 ("All objections to the assessment shall be deemed waived unless presented on such appeal."). The statute also precludes a property owner from raising objections to the special assessment in any other manner. *Id.* ("This section provides the exclusive method of appeal from a special assessment levied pursuant to this chapter."). Minnesota courts have interpreted this statute to mean unambiguously that there is "no other avenue of contesting special assessments." *Sievert v. City of Lakefield*, 319 N.W.2d 43, 44 (Minn. 1982), citing *Krahl v. Nine Mile Creek Watershed Dist.*, 283 N.W.2d 538, 545 (Minn. 1979); *see also Peterson v. City of Inver Grove Heights*, 345 N.W.2d 274, 277 (Minn. Ct. App. 1984) ("Minn. Stat. §§ 429.061, subd. 2 and 429.081 are not ambiguous. They require timely written objections or a reasonable cause for failing to so object to preserve the right to appeal. The clear objective of the statutes was to improve the assessment process by promoting participation in the process and to insure a degree of finality.").

Specifically, the Minnesota Supreme Court interpreted Minn. Stat. § 429.081 to mean that, where a property owner did not object pursuant to § 429.081 but rather sued directly in district court, the owner waived the right to assert any claims against the municipality attacking the assessment. In *Sievert v. City of Lakefield*, the court held that Minn. Stat. § 429.081 barred contract claims attacking a special assessment that plaintiff attempted to bring as direct suit, finding that "[s]ince the legislative intent of section 429.081 is clear, Sievert can maintain his suit only if it is not an attack on a special assessment." 319 N.W.2d at 44 (noting "there is no suggestion" that plaintiff could not have brought his contract claims in the hearing process provided); *see also Chard Realty,*

*Inc. v. City of Shakopee*, 392 N.W.2d 716, 719 (Minn. Ct. App. 1986) (owner waived objections to assessment by not objecting or appealing according to Minn. Stat. § 429.081).

Appeal under Minn. Stat. § 429.081 is not the exclusive method of attacking an assessment, however, if the City failed to provide proper notice of its intent to assess. This is because the City has the authority to adopt assessments only when it provides adequate notice. *Klapmeier v. Town of Ctr. of Crow Wing Cnty.*, 346 N.W.2d 133, 136 (Minn. 1984) ("Proper notice of assessment proceedings is a jurisdictional prerequisite to any action by the town board. There must be strict compliance with the statutory notice provisions." (internal citations omitted)); *see also Sykes v. City of Rochester*, 787 N.W.2d 192, 197 (Minn. Ct. App. 2010) (city council "lacked jurisdiction to adopt the assessments because it did not strictly comply with the statutory notice requirements. Because the assessments were never adopted, the 30-day limitations period never began to run."); *Countryside Village v. City of North Branch*, 430 N.W.2d 206, 208 (Minn. Ct. App. 1988), *aff'd* 442 N.W.2d 304 (Minn. 1989).[10]

---

[10] However, if the Court found that the delay in appealing the assessment was so long that it prejudiced the City in its ability to defend the special assessment, even a defect in notice may not permit a property owner to challenge an assessment after the time limit in § 429.081 expired. *See Shortridge v. Daubney*, 425 N.W.2d 840, 842 (Minn. 1988) ("On the record before us, we hold that Shortridge, Berglund and Daubney's delay of approximately four years in challenging the special assessment precludes relief from the assessment based upon a technical defect in the notice of assessment as to the length of time within which an appeal to district court may be taken.").

DRB does not object to the Magistrate Judge's finding that Minn. Stat. § 429.081 applied to its assessments and that it failed to file an appeal in satisfaction of its requirements.[11] Rather, DRB argues that the time limit for appeal to the district court never began because the City lacked jurisdiction to adopt the assessments because its Notices of the assessments were deficient. But the City's Notices here were adequate and complied with the requirements under Minneapolis ordinance, as discussed above. Thus, the City had jurisdiction to adopt the assessments and DRB was required to file objections with the City and appeal to the district court in accordance with Minn. Stat. § 429.081, which it did not do. The Court finds that the City's jurisdiction to adopt the special assessments was not invalid because of deficient notice and the appeal procedures of Minn. Stat. § 429.081 applied.

Finally, DRB argues that the appeal procedures and time limit do not apply because the special assessments are facially void because they bear no relation to the benefits received. Whether or not an assessment is reasonably related to the benefits the property owner receives is a question for a court once the assessment is properly before the court, not a basis for a court to preemptively declare an assessment void such that the time limit for appeal never began to run. DRB cannot avoid the time limit and procedures for appeal by disputing the reasonableness of the fee, as the Court could not

---

[11] It is not clear why DRB did not do so. It seems that it would have been possible for DRB to comply with the timing requirements of the appeal procedure under § 429.081, as it filed this action within thirty days of the hearing officer's 2012 decision. The record is not clear as to why this action could not be construed as an appeal under § 429.081, but DRB does not dispute that it did not properly file an appeal under those procedures.

reach a conclusion on that question before the issue is properly before the Court (through a proper, timely appeal).   The case DRB cites in support of facially voiding assessments involved disputes that were properly before the court after the owner complied with the relevant appeal procedures.   *See Cont'l Sales & Equip. v. Town of Stuntz*, 257 N.W.2d 546, 549-50 (Minn. 1977) (determining that the plaintiffs' objections were properly before the court and then, reviewing the objections themselves, determining that a portion of the assessment at issue was void because it did not relate to the benefits the owners received); *see also American Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 784 (Minn. Ct. App. 2011) (court considered challenge to reasonableness of assessment, where plaintiff had properly appealed the special assessment to the district court).[12]   DRB provides no legal authority, and the Court has found none, in which a court exempted property owners from the appeal procedures of Minn. Stat. § 429.081 based on an initial determination that the assessment was facially void.   Because DRB did not timely or properly appeal the assessments, the Court need not consider any challenge to the amount of the fees and cannot preemptively void the assessments so as to render the requirements of § 429.081 inapplicable.   DRB was required to appeal the assessments through the

---

[12] In *Continental Sales & Equipment*, the Minnesota Supreme Court held that taxpayers could challenge a special assessment levied as real estate tax through the procedures under *either* Minn. Stat. § 429.081 or § 278.01, meaning that a taxpayer who missed § 429.081's deadline could still challenge the assessment. 257 N.W.2d at 548-49.   But that case was decided before the Minnesota Legislature amended § 429.081 to add that "[t]his section provides the exclusive method of appeal from a special assessment levied pursuant to this chapter."   *See Sievert*, 319 N.W.2d at 44 (noting *Continental Sales & Equipment*, but clarifying that the legislature amended the section and that "this change clarified legislative intent that there be no other avenue of contesting special assessments").

procedures listed in § 429.081.   Because it did not, the Court cannot consider its objections to the assessments. *See In re Skyline Materials, Ltd.*, 835 N.W.2d 472, 477 (Minn. 2013) ("Statutory provisions for service of notice must be strictly followed in order for a court to acquire jurisdiction.").

## IV.   OTHER CLAIMS BARRED BY APPEAL DEADLINE

Finally, DRB argues that its causes of action that are not related to the assessments are not subject to the time limit.   In making this argument, DRB appears to consider its registration with the City for the VBR program to be a contract, giving rise to contractual causes of action such as fraud, negligent misrepresentation, and unjust enrichment.   DRB makes no argument and provides no evidence upon which a reasonable jury could conclude that it had a contract with the City such that those claims could be considered separate from its objections to the assessment.   Rather, those claims essentially attack the City's adoption of the assessments, and are barred by DRB's failure to appeal the assessments pursuant to § 429.081.   *See Sievert*, 319 N.W.2d at 44 (explaining that plaintiff could have brought contract claims that essentially attacked the assessment as part of special assessment appeal, and such claims were therefore waived by failure to appeal under § 429.081).[13]

---

[13] DRB also argues that the City cannot use its own charter and laws inconsistently with statute or common law.   But it is not the City's charter or ordinances that make appeal under Minn. Stat. § 429.081 the exclusive method for objecting to a special assessment – it is state law. Certainly the Minnesota Legislature has the power to limit the manner and time in which parties can raise certain claims.

All of DRB's claims seek to challenge the special assessments and should have been filed as an appeal from the assessments through the procedure laid out in Minn. Stat. § 429.081.  DRB did not do so.  Therefore, the Court will adopt the recommendation of the Magistrate Judge to dismiss DRB's claims with prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** plaintiffs' objections [Docket No. 63] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated August 2, 2013 [Docket No. 62]. Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Motion for Partial Summary Judgment as to Defendants' Tax Injunction Act Defense [Docket No. 9] is **DENIED as moot**.

2.      Plaintiffs' Motion for Partial Summary Judgment [Docket No. 15] is **DENIED**.

3.      Defendants' Motion for Summary Judgment [Docket No. 33] is **GRANTED**.

4.      Plaintiffs' lawsuit is hereby **DISMISSED with prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   September 30, 2013                 ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                                      United States District Judge